No. 62,901

IN THE MATTER OF THE ESTATE OF EVERETT LEROY MCDOWELL, Deceased. SOUTHWEST NATIONAL BANK, *Appellee,* v. ESTATE OF EVERETT LEROY MCDOWELL, *Appellant.*

(777 P.2d 826)

Opinion filed July 14, 1989.

*Ken W. Dannenberg,* of John A. Vetter, P.A., of Wichita, argued the cause, and *John A. Vetter,* of the same firm, was with him on the brief for appellant.

*Warren G. Jones,* of Malone, Dwire and Jones, of Wichita, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

MCFARLAND, J.: The Estate of Everett Leroy McDowell, deceased, appeals from an order allowing a claim filed by the Southwest National Bank (Bank). The claim was filed after the expiration of the four-month period provided for by the Kansas nonclaim statute (K.S.A. 1988 Supp. 59-2239). The trial court held, based on *Tulsa Collection Servs. v. Pope,* 485 U.S. 478, 99 L. Ed. 2d 565, 108 S. Ct. 1340 (1988), that K.S.A. 1988 Supp.

59-2239 was unconstitutional insofar as it does not require the estate to give actual notice to known creditors.

The facts are not in dispute. In May of 1981, the City of Wichita issued industrial revenue bonds in the principal amount of $250,000.00 to provide funds for the acquisition of real property and equipment, and for construction. The property was leased to McDowell-Hogue Electric, Inc. Payment of principal and interest was guaranteed by McDowell-Hogue Electric, Inc., E. L. McDowell, and M. E. Hogue pursuant to a guaranty agreement. Southwest National Bank is the fiscal agent for the City of Wichita relative to the bonds.

On September 1, 1986, McDowell-Hogue Electric, Inc., defaulted on the lease agreement with the City of Wichita. The Bank notified the guarantors of the default and on March 12, 1987, initiated an action against the guarantors in Sedgwick County.

Everett Leroy McDowell died on August 25, 1987. His will was admitted to probate in Butler County on October 16, 1987. Mildred McDowell, wife of the decedent and mother-in-law of M. E. Hogue, was appointed executor of the estate. Notice to creditors was published in the El Dorado Times on October 22, October 29, and November 5, 1987. No actual notice was given to the Bank or the City of Wichita.

K.S.A. 1988 Supp. 59-2239 provides:

"All demands, including demands of the state, against a decedent's estate, whether due or to become due, whether absolute or contingent, including any demand arising from or out of any statutory liability of decedent or on account of or arising from any liability as surety, guarantor or indemnitor, and including the individual demands of executors and administrators, not exhibited as required by this act within four months after the date of the first published notice to creditors as herein provided, shall be forever barred from payment, except that the provisions of the testator's will requiring the payment of a demand exhibited later shall control."

The four-month period provided for in the nonclaim statute expired on February 22, 1988. *Pope* was decided April 19, 1988. On April 20, 1988, the Bank filed its petition for allowance of claim in the Estate of Everett Leroy McDowell. A hearing on the claim was held on May 3, 1988, with the matter being taken under advisement. The claim was allowed on August 23, 1988. Judgment was rendered in a Sedgwick County action on August 31, 1988, against McDowell-Hogue Electric, Inc., M. E. Hogue,

and the Estate of Everett Leroy McDowell in the amount of $266,168.30. The property was sold through the Bank's efforts on January 3, 1989. The deficiency against the guarantors is approximately $90,000.00.

In *Pope*, the United States Supreme Court held an Oklahoma nonclaim statute to be a denial of due process as to creditors who are known or reasonably ascertainable absent notice by mail or other means as certain to ensure actual notice. *Pope* was remanded for further proceedings to determine whether reasonably diligent efforts would have identified appellant (Tulsa Professional Collection Services) and "uncovered its claim." 485 U.S. at 491.

The rationale underlying *Pope* is fully set forth in the opinion therein and no purpose would be served by its inclusion herein. The appellant estate, in the matter before us, considers the Kansas nonclaim statute (K.S.A. 1988 Supp. 59-2239) indistinguishable in any pertinent manner from the Oklahoma statute at issue in *Pope*. A review of the two statutes reveals no rational basis on which to distinguish *Pope*. *Pope* is, therefore, controlling. We must conclude that the trial court correctly held that K.S.A. 1988 Supp. 59-2239 is unconstitutional insofar as it does not require actual notice be given to creditors who are known or reasonably ascertainable. It should be noted that the 1989 legislature, in response to *Pope*, amended K.S.A. 59-709 to require that the personal representative of a decedent's estate give actual notice to known or reasonably ascertainable creditors prior to the expiration of the nonclaim statute. Said amendment became effective July 1, 1989. Thus, the constitutional defect in K.S.A. 1988 Supp. 59-2239 was cured by the 1989 amendment to K.S.A. 59-709.

The dispute before us is whether the *Pope* decision should be restricted to prospective application and thus preclude allowance of the claim herein. The appellant estate argues that the claim herein was barred on February 22, 1988, when the four-month period expired and that it would be inappropriate to apply thereto a due process standard established on April 19, 1988, by the United States Supreme Court in *Pope*.

In *Chevron Oil Co. v. Huson*, 404 U.S. 97, 30 L. Ed. 2d 296, 92 S. Ct. 349 (1971), the United States Supreme Court identified

three factors that are relevant to the nonretroactive application of judicial decisions:

"First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied [citation omitted] or by deciding an issue of first impression whose resolution was not clearly foreshadowed [citation omitted]. Second, it has been stressed that 'we must [citation omitted] weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.' [Citation omitted.] Finally, we have weighed the inequity imposed by retroactive application, for '[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the "injustice or hardship" by a holding of nonretroactivity.' " 404 U.S. at 106-07.

See *Northern Pipeline Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 87-88, 73 L. Ed. 2d 598, 102 S. Ct. 2858 (1982).

The Bank argues that the *Pope* decision represents only a new application of established due process standards. It does not argue that *Pope* should be applied to all estates whether open or closed, as it concedes such would cloud titles and create severe hardship. Rather, it points out that the estate herein was open at the time of the *Pope* decision, that the time spans involved herein are short and of no real significance in terms of administering the statute for hardship, and that the failure to apply *Pope* herein would result in a windfall to the estate. It should also be noted that in *Pope* the court remanded the case for consideration of the specified factors as to whether the creditor was known or reasonably ascertainable. The *Pope* decision is silent as to the application to be utilized in other cases.

The estate relies heavily upon *Giles v. Adobe Royalty, Inc.*, 235 Kan. 758, 684 P.2d 406 (1984), in support of its argument for prospective application. *Giles* faced the question of whether a 1956 United States Supreme Court decision requiring direct notice to readily locatable parties to an action should be applied retroactively to invalidate a 1936 foreclosure action. 235 Kan. at 760-61; *Walker v. Hutchinson City*, 352 U.S. 112, 1 L. Ed. 2d 178, 77 S. Ct. 200 (1956). The court noted that, because publication notice had been widely used for 94 years, applying *Walker* retroactively would cloud the title to most Kansas real estate, would force all titles to be reexamined, and would subject title companies to unforeseen liability. 235 Kan. at 766-67. In addition, "divorces granted on publication notice would be void,

nullifying many second marriages and rendering the children born to such unions illegitimate." 235 Kan. at 767.

After examining United States Supreme Court decisions involving retroactive application, the court concluded: "[I]f the hardship and disruption caused by a retrospective application of a court decision changing public policy is significant, the U.S. Supreme Court has had no hesitation in applying the decision prospectively only." 235 Kan. at 765. Since retroactive application would cause substantial hardships and disruption, *Walker* was applied prospectively only. 235 Kan. at 767. Unlike *Giles*, the application of *Pope* to this case does not result in inequities or significant hardships or disruptions. No funds have been distributed from the estate. Disturbance of real estate titles or the validity of divorces are not involved. Finally, our time span is significantly different from *Giles*. *Pope* was decided the day before the Bank filed its untimely claim against the estate and less than two months after the four-month period of the nonclaim statute had expired. We are not involved with a situation, for example, where proper payment of claims filed within the four-month period has depleted the estate to where insufficient assets remain to satisfy the claim herein and application of *Pope* would create real hardship and disruption. In the case before us, the only claim filed within the four-month period was pending when the Bank's claim was filed.

In summary, we find no valid reason not to apply *Pope* to the case herein. The trial court had the benefit of *Pope* when it entered its decision. The trial court found: "Southwest National Bank's identity as a creditor in the estate was known or 'reasonably ascertainable' and as such, should have been given notice."

This finding is not challenged on appeal.

The judgment is affirmed.